On Rehearing.
O’NIELL, J.
The rehearing granted in this case was restricted to plaintiff’s -claim for $1,000 under policy No. 2152 for $1,400.
[4] It is conceded in defendant’s answer to the suit that no request was made for cancellation of this policy, either by the company or by the insured. The policy was returned to the company’s agent, Mehle, by mistake of a clerk in the employ of the insured. When the broker, representing the agent Mehle, requested the return of the policy No. 2151, the insured instructed his clerk, Landry, to deliver the policy to the broker. The two policies, No. 2151 and No. 2152, were together in a drawer of a safe. The clerk understood the instruction to be to deliver both policies. It appears tlmt the agent, Mehle, *991 afterwards got the. false impression.that the company had requested cancellation of both policies. The agent therefore canceled both policies as of date the 7th of September, 1915, the day on which the company had requested cancellation of policy No. 2151. This shows plainly that the agent, Mehle, was under the impression that the company, and not the insured, had requested cancellation of the policy No. 2152, because there is no pretense that the insured requested cancellation on that date. Both policies were, at that time and for a period exceeding a week thereafter, in the possession of the insured, and during that time the insured was not even informed that the company had demanded cancellation of the policy No. 2151. The fact that the agent, Mehle, calculated the return premium on policy No. 2152 on the pro rata basis, instead of the basis of the short rate, is also evidence that the agent was acting undfer the false impression that the company- had requested cancellation; The cancellation was indorsed on policy -No. 2152 by the agent thus: “Canceled pro rata by. Co., Sept. 7/15. Return prem. $6/T9.” There is no evidence as to whether this indorsement was made before or after the storm of September 29,- 1915, except that .the. return premium was not remitted to the insured until the day after the storm. It is .certain that the indorsement was not made on the 7th of September, 1915, because the policy was then in the possession of. the insured, and Mehle •had-, not .then received a request from the company .even for cancellation of the policy No. 2151. Under these circumstances, we presume that the policy No. 2152 was not in fact canceled until the return premium was remitted to the insured; tha.t is, on the day after -the storm. And the cancellation was then made through error on the part of the agent, believing that the company had requested cancellation. The agent had no authority to cancel the policy either from the company or from the insured. In fact, there is no pretense that he was acting under authority of the clause in the policy contract which permits cancellation at the request of the insured. Therefore, even if the agent had indorsed the cancellation on the policy before the storm, thfe cancellation would have been unauthorized and invalid. Our conclusion is that the policy No. 2152 was in force at the time of the storm.
[5] By effect of the destruction of the property of the insured, by the tornado, the contract of insurance was converted into au obligation - of the insurance company to p.ay the insured the amount of the loss. The next question, therefore, is whether the obligation was extinguished by the receiving and cashing, by the insured, of the check for the return premium. The check was for $35.41, being for $28.62 unearned premium on policy No. 2151, of which the company had requested cancellation, and for $6.79 unearned premium on the policy No. 2152, which was canceled by mistake. Erom the testimony of the insured, it appears that he paid little or no attention to the amount or purpose of the check, when he cashed it, and did not observe that it included a return premium on policy No. 2152. If we should conclude , that he did observe, or should have observed, that the check included the $6.79 return premium on policy No. 2152, it would not affect the case, because the letter or credit memorandum accompanying the check contained the false statement that the policy was canceled on the 7th of September, 1915. If the insured was misled by the statement, in the credit memorandum or letter accompanying the check, that policy No. 2152 was canceled before the storm, his receiving and cashing the -check was not a waiver of his right to recover the amount actually due him under the policy. There is therefore no merit in defendant’s contention that the receiving and cashing of the-check, by the insured, operated *993 as an acquittance and discharge of the obligation of the insurance company to pay the amount due under the policy.
[6] The only remaining question is whether the failure of the insured to give the' company notice of loss within 15 days after the storm worked a forfeiture of his claim under the pplicy. The policy contract does not in terms provide that a claim for loss or damages shall be forfeited by the failure to give such notice within 15 days. On the contrary, there is a strong implication, from the language of the contract, that the failure to give the notice within the time specified should not operate as a forfeiture of any claim for loss or damage under the policy. The contract provides that, in the event of loss, the insured shall, within 15 days, give notice of such loss in writing to the company, and shall, within 60 days after the date of the tornado, windstorm, or cyclone, furnish proofs of loss. The two concluding sentences in the paragraph referring to the duty of the insured to give notice of loss within 15 days, and to furnish proof of loss within 60 days, make a plain distinction between the consequence of a failure to furnish propfs of loss within 60 days and the consequence of a failure to give notice of loss within 15 days. As to the proofs of loss, the stipulation is that all claims for any loss or damage shall be forfeited by failure to furnish such proofs of loss within the time and in the manner provided, including examination under oath and the award of appraisers, if the same or either of them has been requested. There is no such stipulation as to the consequence of failure to give the notice of loss within 15 days. The consequence of a failure to give notice of loss is therefore embraced in the general provision that no suit or action on the policy, for the recovery of any claim, shall be sustainable in -any court of law or equity until after full compliance by the insured with “all the foregoing requirements.” The duty to give the notice of loss was a condition subsequent to the loss, and a condition precedent to the bringing of suit on the policy. .But the failure to give the notice within 15 days after the storm was not a forfeiture of the claim for loss or damage. Of course, the company could not have been legally deprived of any defense or advantage by the failure of the insured to give the notice of loss within 15 days; but there is no contention or pretense that the company was thereby deprived of any defense or advantage.
The judgment appealed from, in so far as it rejects plaintiff’s demand under policy No. 2152, is annulled, and it is now ordered, adjudged, and decreed that plaintiff recover of and from the defendant $1,000, with interest at 5 per cent, per annum from judicial demand, that is, from the 10th of March, 1916, and all costs of this suit.